## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 02 2016, 8:56 am

*Kevin S. Smith*

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS

Adam J. Sedia
Rubino, Ruman, Crosmer & Polen
Dyer, Indiana

ATTORNEY FOR APPELLEE

Robert L. Lewis
Robert L. Lewis & Associates
Gary, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re Guardianship and Adoption of L.J.M. (a Minor) | February 2, 2016 |
| M.M. and L.M., | Court of Appeals Case No. 45A05-1508-GU-1109 |
| *Appellants-Petitioners,* | Appeal from the Lake Superior Court |
| v. | The Honorable Elizabeth F. Tavitas, Judge |
| J.R., | Trial Court Cause Nos. 45D03-1406-GU-19 45D03-1409-GU-41 45D03-1409-AD-26 |
| *Appellee-Respondent* | |

**Baker, Judge.**

[1] M.M. (Grandmother) and L.M. (Grandfather) (collectively, Grandparents) appeal the trial court's order terminating their guardianship over L.J.M. (Child) and denying their petition to adopt her. Grandparents argue that the evidence in the record does not support the trial court's ruling. Finding the evidence sufficient, we affirm.

## Facts

[2] J.C.R. (Father) and A.M. (Mother) were in a romantic relationship for about two months in 2009. Child was born as a result of the relationship on January 30, 2010. After Child's birth, she and Mother lived with Grandparents (Mother's parents) in Indiana. Father lived out of state, but traveled by car from Texas or by plane from California to visit Child five or six times a year. Father's visits generally lasted one to two weeks. In the summer of 2011, Mother was having substance abuse issues and was kicked out of Grandparents' home. Mother asked Father to care for Child. He agreed, flew to Indiana from California to retrieve Child, and cared for her in his home for two months. At the end of those two months, Grandmother flew to California to retrieve Child. Father saw Child two more times between her retrieval by Grandmother and November 2011.

[3] On November 6, 2011, Mother died. Three weeks later, on November 29, 2011, Grandparents filed a petition for temporary and permanent guardianship. They did not mention Father in either filing; in fact, in the petition for temporary guardianship, Grandmother attested that the identity of Child's

Father was unknown. Father found out about the guardianship proceedings and appeared at the first hearing on March 27, 2012, to contest the guardianship. Because Father had not yet established paternity, the trial court granted the permanent guardianship to Grandparents. On March 28, 2012, Father filed a petition to establish paternity, and on July 10, 2012, based upon DNA evidence, Father was adjudicated to be Child's father and parenting time was ordered. He visited with her about five to six times in 2012. At some point in the summer of 2012, Father filed a motion to modify custody. The modification hearing was originally set for November 2012, but was continued multiple times for reasons beyond Father's control.

[4] In summer 2013, Grandmother made a report to the Department of Child Services (DCS) that Father had been sexually abusing Child. As a result of this report, DCS and law enforcement began investigating the allegations. The custody modification hearing was continued pending the results of the investigation. A police detective who was investigating Grandmother's report told Father that he could not visit with Child until after the investigation was complete. May or June of 2013 was the last time Father saw Child. After that time, he repeatedly asked his attorney and the Guardian ad Litem when he could see Child, and both advised him "to just wait, so [he] just waited." Tr. p. 40. Eventually, the allegations were unsubstantiated and neither a criminal case nor a Child in Need of Services case was ever filed. The Guardian ad Litem assigned to the investigation concluded that no abuse had ever taken place.

Finally, an all-day custody modification hearing was set for March 10, 2014. The hearing was again continued, twice, at Grandparents' request. On September 26, 2014, Grandparents filed a petition to adopt Child, arguing that Father's consent to the adoption was not required. The adoption, guardianship, and paternity cases were consolidated and set for a final hearing. The trial court held a hearing on the guardianship and adoption cases on July 13 and 14, 2015. On July 27, 2015, the trial court entered an order finding in Father's favor:

> 5.  The Court finds that Father had contact with his daughter when Mother was alive and after her passing. Father has resided in Los Angeles and Texas, and the Court finds that despite the distance, Father has made great efforts to stay in contact with his daughter.

> ***

> 9.  During the investigation regarding the allegations of abuse, the Court suspended parenting time between Father and the child. Subsequent to the investigation, Maternal Grandparents kept the child from Father. Father made several efforts to contact the Maternal Grandparents and child, and the Maternal Grandparents have denied Father all contact with the child.

> 10. The Court finds that the Maternal Grandparents have not been entirely credible and that Father has been more credible.

> ***

ANALYSIS AND CONCLUSIONS OF LAW

***

2.     The Court finds no evidence submitted that this child would be in any harm in her father's custody.  The Court does recognize the bond that the child has with the Maternal Grandparents.  The Court also finds that this bond has been strengthened by the delays in these proceedings and due to the Maternal Grandparents thwarting Father's efforts to maintain a relationship with the child.  Had Father simply been able to maintain his visitation schedule with the child, the child would have been in a better position.

***

5.     The Court finds that Father did not abandon the child.

6.     The Court finds that Father's Consent is not implied and his Consent is necessary for an adoption to proceed.  The Maternal Grandparents have failed to prove that Father knowingly and intentionally failed to keep contact with the child for a year and the Maternal Grandparents have failed to prove that Father knowingly failed to provide for the care and support of the child when able to do so as required by law or judicial decree.

Appellants' App. p. 30-38.  The trial court terminated the guardianship and denied the petition for adoption.  Grandparents now appeal.

# Discussion and Decision

[6] The Grandparents appeal only the denial of their petition for adoption; they do not appeal the termination of the guardianship. When we review a trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion and the trial court reached an opposite conclusion. *In re Adoption of M.L.*, 973 N.E.2d 1216, 1222 (Ind. Ct. App. 2012). On appeal, we will not reweigh the evidence, instead focusing on the evidence and inferences most favorable to the trial court's decision. *Id.* We generally give considerable deference to a trial court's rulings in family law matters, "as we recognize that the trial judge is in the best position to judge the facts, determine witness credibility, get a feel for family dynamics, and get a sense of the parents and their relationship with their children." *Id.*

[7] Indiana Code section 31-19-9-8(a) provides, in pertinent part, as follows:

> Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:
>
> ***
>
> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or

(B)     knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

Grandparents argue that the trial court erred by finding that Father had not failed without justifiable cause to communicate with Child for one year and that Father had not knowingly failed to provide for support of the Child when required to do so.

[8]     Father does not deny that he did not communicate with Child for over one year after Grandmother lodged the sexual abuse allegations. The evidence in the record, however, readily supports the trial court's implicit conclusion that there was "justifiable cause" for the lack of communication. Specifically, Father followed the advice of the investigating police officer, who told him to refrain from communicating with Child during the investigation, and his attorney and the Guardian ad Litem, who advised him to wait. Then, he followed the court order preventing him from seeing Child. Once the allegations were deemed to be unsubstantiated by all investigating authorities, he attempted to contact Child on multiple occasions but was thwarted by Grandparents, who did not answer his calls and did not facilitate his attempts to see or communicate with his daughter. Tr. p. 41. Father testified that the sole reason he had not been able to see Child was because Grandmother "wouldn't let me . . . [h]ave any communication with [Child]." *Id.* at 43.

[9]     The trial court explicitly found that Father was credible and that Grandparents were not credible; we will not second-guess that assessment. The evidence in

the record, together with the trial court's assessment of the credibility of all parties involved, readily supports the trial court's conclusion that Father had not failed without justifiable cause to communicate with Child for one year.

[10] As for Father's financial support of Child, it is undisputed that he did not provide support to Grandparents for the care of Child. We again emphasize that Grandparents were unwilling to communicate with Father and repeatedly failed to answer or return his calls. Additionally, Father testified that Grandmother told him "that she didn't need my money anymore" and refused to give him her bank account information for direct deposit purposes. Tr. p. 34. Given the Grandparents' obstreperous behavior, we decline to reverse the trial court on the basis of Father's lack of financial support.

[11] We acknowledge, as did the trial court, that Child is significantly bonded to Grandparents. However, we share the trial court's conclusion that if Grandparents had handled things differently—if they had facilitated a relationship between Father and Child, if they had not drawn out the litigation—then Child would have had a much stronger relationship with Father at the close of the litigation. We decline to allow the behavior of Grandparents in this regard to deprive Father of his constitutional right to parent his child. Father has made great efforts to be a presence in Child's life and wants to be her parent. Nothing in the record leads us to second-guess the trial court's determination that he is entitled to do so.

The judgment of the trial court is affirmed.

Bradford, J., and Pyle, J., concur.